IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JASON D. WARNER,<br><br>  Petitioner,<br><br>vs.<br><br>WARDEN KIM HENDERSON,<br><br>  Defendant. | CASE NO. 3:22-CV-01345<br><br>DISTRICT JUDGE JAMES G. CARR<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT & RECOMMENDATION (ECF DOC. 3)** |

On July 29, 2022, Petitioner Jason D. Warner ("Petitioner" or "Mr. Warner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF Doc. 1 ("Petition")) and a motion for stay of execution of sentence pursuant to 28 U.S.C. § 2251, requesting that the Court stay further service of his state prison sentence and release him on bond during the pendency of his federal habeas corpus proceedings. (ECF Doc. 3 ("Motion for Stay")). Petitioner's case was automatically referred to the undersigned pursuant to Local Rule 72.2 that same date.

On October 4, 2022, Respondent filed an opposition to the Motion for Stay. (ECF Doc. 6.) Respondent also filed her Return of Writ on October 4, 2022. (ECF Doc. 7.) On October 18, 2022, Petitioner filed a reply in support of stay of execution of sentence. (ECF Doc. 8.) The briefing on the Petition is not yet complete. However, the Motion for Stay is fully briefed and ripe for review. The undersigned hereby submits this Report and Recommendation as to Petitioner's Motion for Stay.

As explained more fully herein, the undersigned recommends that the Court **DENY** Mr. Warner's Motion for Stay (ECF Doc. 3).

1

## I. Factual and Procedural Background

A summary of certain factual and procedural background is provided below as context for this report and recommendation. Following a bench trial, Mr. Warner was found guilty of leaving the scene of an accident/complicity, a fourth-degree felony (Count 3), and tampering with evidence/complicity, a third-degree felony (Count 4). (ECF Doc. 3 p. 2, ECF Doc. 7-1 pp. 36-40.) The trial court sentenced Mr. Warner to a total prison term of twenty-four months, with possibility of a three-year term of post-release control. (*Id.*) Mr. Warner's request for stay of execution of sentence was denied by the trial court, but later granted by the court of appeals. (ECF Doc. 3 p. 2, ECF Doc. 7-1 pp. 34, 126-29.)

The Ohio Court of Appeals then affirmed Mr. Warner's convictions and sentence, providing the following background concerning Mr. Warner's convictions:

> {¶2} On June 4, 2020, just after midnight, the record indicates that Jason's wife, Julia Warner ("Julia"), was driving a black Jeep Wrangler southbound on SR 203 with Jason in the passenger seat. At the same time, Colton G. was driving northbound on SR 203 in a BMW X3. As both vehicles approached CR 106, also known as Somerlot Hoffman Road, Julia attempted to make a left turn onto CR 106 without yielding to Colton's vehicle. The Warners' Jeep Wrangler struck the left front of Colton's BMW, causing the BMW to travel off the right side of the road and strike a utility pole. The wreck resulted in serious damage to Colton's vehicle and trapped him, semi-conscious, inside.
>
> {¶3} Some nearby residents in the rural area heard the crash and saw a male and female—the Warners, who were not known to the witnesses—walking around the crash site and looking into the damaged BMW. Julia was observed to have her hand over her mouth by one witness. Shortly thereafter, the witnesses saw the black Jeep Wrangler drive away from the scene of the accident prior to the arrival of law enforcement.
>
> {¶4} One of the nearby witnesses approached the scene after the Jeep Wrangler left and saw that Colton's vehicle was smoking and noisy. Colton himself was trapped in his vehicle, bloody, and semi-conscious. One witness called 911 and emergency services responded. Colton had to be extracted from his vehicle with a "hydraulic spreader," also known as the "jaws of life," before being taken to the hospital.

{¶5} Meanwhile, the Warners went home, leaving marks in the roadway and their driveway where the vehicle's rim was scraping the pavement through a deflated tire. A neighbor of the Warners was out walking and heard their vehicle making a lot of noise coming up the street. He saw the Warners' Jeep pull into their garage and close the door, though the neighbor did not see who was driving.

{¶6} The Warners did not contact anyone regarding the accident until approximately nine hours later, when they approached law enforcement together to accept responsibility for the accident. At that time, and over the ensuing weeks, Julia made multiple statements indicating that she was driving during the accident, that she thought there was a stop sign in the other direction, and that she misjudged the turn in the dark and the rain. When law enforcement investigated the matter, virtually all of the evidence pointed to Julia driving at the time of the crash, such as the bruising on her body consistent with the driver's-side seatbelt, her DNA on the driver's-side airbag, and Jason's DNA on the passenger's-side airbag. As for his part, Jason initially told a coworker that he had basically been "passed out" or "asleep" through the whole incident, though he later acknowledged to the same coworker that he had gotten out of the Jeep Wrangler at the scene, as other witnesses had claimed.

{¶7} On September 9, 2020, a joint indictment was filed against Jason and Julia alleging that they had each individually committed Complicity to Vehicular Assault in violation of R.C. 2923.03(A)(2) and R.C. 2903.08(A)(2)(b), a felony of the fourth degree (Count 1); Complicity to Vehicular Assault in violation of R.C. 2923.03(A)(2), R.C. 2903.08(A)(2)/(b), and R.C. 4549.02(A)(1), a felony of the third degree (Count 2); Complicity to "Leaving the Scene of an Accident" in violation of R.C. 2923.03(A)(2) and R.C. 4549.02(A)(1), a felony of the fourth degree (Count 3); and Complicity to Tampering with Evidence in violation of R.C. 2923.03(A)(2) and R.C. 2921.12(A)(1), a felony of the third degree (Count 4). Jason and Julia pled not guilty to the charges. They also waived a jury trial and elected to proceed to a bench trial, with a visiting judge assigned to preside over the matter.

{¶8} Prior to trial, the parties entered into a number of stipulations, which included the authenticity of various lab reports, photographs, medical records, phone records, etc. In addition, the Warners also agreed to stipulate that Colton suffered serious physical harm as a result of the accident, obviating the need for testimony from a significant number of medical professionals.

{¶9} The Warners' bench trial was held March 8-10, 2021. Importantly, the two charges for Complicity to Vehicular Assault against Jason were dismissed, though Vehicular Assault charges remained pending against Julia as the driver of the vehicle at the time of the accident. At the conclusion of the trial, the trial court noted that it did not have to provide any reasoning to support its general findings; nevertheless, the trial court made some statements regarding the evidence on the record. Ultimately, the trial court found Julia and Jason guilty of Count 3 of the

indictment, "Leaving the Scene of an Accident/Complicity" in violation of R.C. 2923.03(A)(2) and R.C. 4549.02(A)(1)/(B)(2)(b), a fourth degree felony, and Count 4 of the indictment, "Tampering with Evidence/Complicity" in violation of R.C. 2923.03(A)(2) and R.C. 2921.12(A)(1), a third degree felony.

{¶10} As for the remaining charges pending against Julia, the trial court found Julia not guilty of both counts of Vehicular Assault, reasoning that while she may have been negligent in causing the accident, she was not reckless, as exhibited by her speed at the time of the crash (roughly 12 or 13 mph). Nevertheless, the trial court initially stated that Julia was guilty of the "lesser-included offense" of Negligent Assault, despite no requests for any lesser-included offenses to be considered by either party. Although the trial court made this initial "finding" regarding lesser-included offenses, at sentencing the trial court subsequently withdrew the findings of guilt regarding-lesser included offenses and did not convict Julia of Negligent Assault, reasoning that an additional element was actually required to establish Negligent Assault. Thus Julia was entirely acquitted of the Vehicular Assault charges and no convictions were ever journalized regarding any purported lesser-included offenses.

{¶11} Following the findings of guilt against the Warners, but prior to sentencing, the Warners filed written, renewed motions for acquittal. They had previously made motions for acquittal during the trial. The Warners took issue with many of the trial court's factual "findings" and legal conclusions that led to the general findings of guilt.

{¶12} On April 14, 2021, the matter proceeded to sentencing; however, prior to sentencing the Warners, the trial court addressed the Warners' renewed motions for acquittal finding that defense counsel was mischaracterizing the evidence and/or the trial court's statements related to the evidence. The trial court further analyzed the evidence, explained its general findings, and overruled the Warners' motions for acquittal. The trial court also filed a written entry denying the renewed motions for acquittal for the reasons stated on the record.

{¶13} The trial court then proceeded to sentencing solely on Counts 3 and 4 of the indictment, ordering Jason and Julia to both serve eighteen months in prison for "Leaving the Scene of an Accident/Complicity," and twenty-four months in prison for "Tampering with Evidence/Complicity." Those prison terms were ordered to be served concurrently, so Jason and Julia Warner each received a twenty-four-month prison term. A judgment entry memorializing Jason's sentence was filed April 16, 2021. It is from this judgment that Jason now appeals, asserting the following assignments of error for our review.

*State v. Warner*, 2021 WL 5563502, *3-6, 2021-Ohio-4182, ¶¶ 2-13 (Ohio App. Ct. Nov. 29, 2021) (footnotes omitted), appeal not allowed, 166 Ohio St. 3d 1448; *see also* (ECF Doc. 7-1 pp.

220-26). The court of appeals revoked the stay of execution when it affirmed Mr. Warner's convictions and sentence. (ECF Doc. 3 p. 2, ECF Doc. 7-1 p. 129.) Mr. Warner filed a notice of appeal with the Supreme Court of Ohio, with a motion for stay of execution and continuation of bond or new bond. (ECF Doc. 3 p. 2, ECF Doc. 7-1 pp. 259-60, 262-69.) On December 2, 2021, the Supreme Court of Ohio granted a temporary stay pending further ruling. (ECF Doc. 3 p. 2, ECF Doc. 7-1 p. 280.) On March 29, 2022, the Supreme Court of Ohio declined to accept jurisdiction of Mr. Warner's appeal and denied his motion for stay of execution of sentence and continuation of bond or new bond. (ECF Doc. 3 p. 2, ECF Doc. 7-1 p. 319.)

After the Supreme Court of Ohio declined to accept jurisdiction of Mr. Warner's appeal, he filed the present federal habeas corpus petition, raising the following three grounds for relief:

> **Ground One**: Petitioner was convicted in the absence of sufficient evidence.
>
> **Supporting facts**: Though the record reflects that Petitioner was present when the crimes were committed, none of the testimony or evidence adduced at trial supported a finding that he was complicit in those offenses.
>
> **Ground Two**: The trial court's finding that Petitioner was both principal and complicitor as to the same indicted offense constituted a legal impossibility.
>
> **Supporting facts**: The record demonstrates that only one individual committed the offenses of Leaving the Scene of an Accident and Tampering with Evidence. It further demonstrates that this individual must have been Petitioner or his wife. The trial court found that both Petitioner and his wife were complicit in those offenses, and were therefore both principal and complicitor simultaneously.
>
> **Ground Three**: The trial court's repeated misconduct violated Petitioner's right to due process and a fair trial.
>
> **Supporting facts**: During Petitioner's sentencing hearing, the trial court indicated that it had conducted an independent investigation and utilized its findings to evaluate Petitioner's mental state, and thus his guilt. Moreover, the trial court acknowledged that it was giving weight to mitigation factors that it was required to consider under Ohio law.

(ECF Doc. 1 pp. 6-9.)

### III.  Law and Analysis

Mr. Warner seeks a stay of execution of his sentence and release on bond pending a decision on the merits of his federal habeas petition under 28 U.S.C. § 2251.  That statute gives federal courts discretion to "stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding." 28 U.S.C. § 2251(a)(1).  While a federal court has the authority to grant the relief sought, the "[r]elease of a state prisoner pending consideration of the habeas corpus petition is reserved for the extraordinary case." *Greenup v. Snyder*, 57 F. App'x 620, 621 (6th Cir. 2003).  Indeed, because a habeas petition challenges a presumptively valid state court conviction, the Sixth Circuit has recognized that "both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case." *Id.* (quoting *Lee v. Jabe,* 989 F.2d 869, 871 (6th Cir. 1993)).

"A prisoner seeking bail pending review of his habeas petition must, among other requirements, convince the district court that exceptional circumstances and the 'interests of justice' warrant relief." *Pouncy v. Palmer*, 993 F.3d 461, 463 (6th Cir. 2021) (quoting *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990)).  More specifically, a petitioner must show "not only a substantial claim of law based on the facts surrounding the petition but also the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Dotson*, 900 F.2d at 79 (quoting *Aronson v. May,* 85 S.Ct. 3, 5, 13 L.Ed.2d 6, 9 (1964) (Douglas, J., in chambers)).  The Sixth Circuit emphasizes that there are few circumstances where this two-prong standard will be met. *See Dotson*, 900 F.2d at 79 ("There will be few occasions where a prisoner will meet this standard."); *Pouncy*, 993 F.3d at 463 ("[i]t will be the rare occasion when an inmate will be able to satisfy [the] standard" in *Dotson*).

Considering the two-pronged *Dodson* framework, the undersigned now turns to whether Mr. Warner has: (1) presented a substantial claim of law based on the facts surrounding the petition; and (2) demonstrated exceptional circumstances to justify relief.

**A.      Whether Petitioner has Presented a Substantial Claim**

Mr. Warner contends that each of his three habeas grounds for relief present substantial claims for federal habeas relief. (ECF Doc. 3 pp. 4-6, ECF Doc. 8 pp. 2-8.) Specifically, he argues that: (1) his convictions were not supported by sufficient evidence; (2) the verdicts reached by the trial court constituted a legal impossibility; and (3) the trial court's conduct in determining his guilt and sentence resulted in a violation of his right to due process. (*Id*.) The state court of appeals considered each of these legal arguments in Mr. Warner's direct appeal and found them to be without merit. (ECF Doc. 7-1 pp. 135, 221, 227-55.) The Supreme Court of Ohio then declined jurisdiction of the appeal on these grounds. (*Id*. at pp. 288-93, 296-99, 319.)

Habeas review of claims already adjudicated on the merits by a state court is always highly deferential under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214. If an application involves a claim that was adjudicated on the merits in State court proceedings, AEDPA provides that the application "shall not be granted" unless the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has further explained that "a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented

7

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Indeed, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. The "standard is difficult to meet" and "was meant to be" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Since the state court of appeals considered Mr. Warner's claims and found them to be without merit, the undersigned must give a high level of deference to that determination when assessing whether Mr. Warner has presented a substantial claim on the merits. *See Stermer v. Warren*, No. 2:12-CV-14013, 2017 WL 5712894, at *1 (E.D. Mich. Nov. 28, 2017) ("Given the high level of deference afforded state court decisions and factual findings on habeas review, the Court finds that Petitioner's claims are not of such weight or merit that they present a substantial claim on the merits."); *Gideon v. Treglia,* No. 3:21 CV 2087, 2021 WL 6031492, at *2 (N.D. Ohio Dec. 21, 2021) (citing *Stermer*, 2017 WL 5712894).

With respect to Mr. Warner's first argument, that his convictions were not supported by sufficient evidence because "[a]t most, the State has demonstrated that Petitioner was present at the time of the offenses" (ECF Doc. 3 pp. 4-5), the court of appeals analyzed this argument in detail and made the following observations:

8

> {¶53} However, Jason's argument that he was merely "present" for the incident ignores several key facts. First, and most importantly, once the crash occurred, Jason got out of the vehicle and was observed walking around the accident scene. He was observed looking into Colton's vehicle, wherein Colton was, at best, semi-conscious, trapped, bleeding, and had his airbags deployed.
>
> {¶54} After seeing the significant damage to Colton's vehicle, and presumably to the driver himself, Jason got back into his own damaged vehicle with his wife and left the scene. Their own vehicle was extremely noisy, by all accounts likely difficult to control, and riding on a rim that was scraping the road. Still they did not stop. Then, when the Warners got home, Jason and Julia, by Jason's own statement, talked about the matter throughout the night for over 8 hours before deciding to come forward and admit that they had been in the vehicle that caused Colton serious physical harm.

*Warner*, 2021 WL 5563502 at *10, 2021-Ohio-4182 at ¶¶ 53-54.  Based on its review of the entire record, the court of appeals found sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Mr. Warner was guilty of all charges.  *Id.* at *10-11, ¶¶ 56-58.

With respect to Mr. Warner's second argument, that the trial court's verdict was "legally impossible" (ECF Doc. 3 pp. 5-6), the court of appeals pointed out that the plain language of the complicity statute said it is "no defense" to a complicity charge that no "principal offender" is convicted.  *Warner*, 2021 WL 5563502 at *13, 2021-Ohio-4182 at ¶ 70 (quoting O.R.C. 2923.03(B)).  The court therefore rejected Mr. Warner's argument that he could only be convicted of complicity if his wife was the principal offender.  *Id.* at *13, ¶¶ 70-71.

With respect to Mr. Warner's third argument, that the trial court violated due process in determining his guilt and sentence (ECF Doc. 3, p. 6), the court of appeals reviewed each of the challenged findings of the trial court and found no error under state or federal law.  *Warner*, 2021 WL 5563502 at *13-14, 2021-Ohio-4182 at ¶¶ 72-78.

Considering the highly deferential AEDPA standard and the state court of appeals' detailed and well-reasoned analysis of each of the legal arguments offered by Mr. Warner in

9

support of the Motion for Stay, the undersigned finds that Mr. Warner has not demonstrated a "substantial claim of law based on the facts surrounding the petition" under the *Dotson* standard.

**B.      Whether Petitioner has Demonstrated Exceptional Circumstances**

Even if Mr. Warner had successfully presented a substantial claim on the merits, the second *Dodson* prong additionally requires him to show that "exceptional circumstances" support relief.  The Sixth Circuit has described "exceptional circumstances" as "the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice." *Dotson*, 900 F.2d at 79 (citation omitted).  It has also emphasized that the circumstances where this standard is met will be "few" and "rare." *See Pouncy*, F.3d at 463; *Dotson*, 900 F.2d at 79.

In support of a finding that this case presents exceptional circumstances, Mr. Warner asserts: (1) his "convictions were both plainly unlawful and unconstitutional" such that "any further detention during the pendency of the Court's review will necessarily constitute an additional constitutional deprivation"; (2) "given his relatively short term of incarceration" and because "it is not certain that [he] will be subject to post-release control," "there is a significant likelihood that [he] will have completed any prison term before the Court has reached a decision"; and (3) he does not pose a flight risk or danger to society.  (ECF Doc. 3 pp. 6-7.)  The Court will address each of these arguments in turn.

With respect to the first argument – that Mr. Warner's conviction was unlawful and his further detention will be an additional constitutional deprivation – courts have recognized that this argument alone is insufficient to demonstrate "exceptional circumstances" since "'[v]irtually all habeas corpus petitioners argue that their confinement is unlawful.'" *Smith v. Sheldon*, No. 5:19CV1496, 2019 WL 6312585, at *2 (N.D. Ohio Nov. 7, 2019) (quoting *Iuteri v. Nardoza*,

662 F.2d 159 (2d Cir. 1981)), *report and recommendation adopted,* No. 5:19 CV 1496, 2019 WL 6311498 (N.D. Ohio Nov. 25, 2019); *Grune v. Mazzuca*, No. 905CV0691TJMGJD, 2005 WL 8171415, at *1 (N.D.N.Y. Nov. 17, 2005) (quoting *Iuteri*, 662 F.2d at 162).

As to the second argument – that Mr. Warner faces a "relatively short" twenty-four month term of incarceration and may not be subject to post-release control – courts have found that even shorter sentences failed to justify release. *See, e.g.*, *Gideon*, 2021 WL 6031492, at *3 (finding a short sentence "does not, on its own, justify release in these circumstances," and that a 180-day misdemeanor sentence did not present exceptional circumstances, even in tandem with health conditions); *Pettus v. Warden, Franklin Med. Ctr.*, No. 1:20-CV-187, 2020 WL 1698334, at *5 (S.D. Ohio Apr. 8, 2020) (finding fourteen months remaining in felony sentence did not support a finding of exceptional circumstances), *report and recommendation adopted,* No. 1:20-CV-00187, 2020 WL 2703134 (S.D. Ohio May 26, 2020).

Finally, as to the third argument – that Mr. Warner does not pose a flight risk or a danger to society – courts have also found similar arguments insufficient to support a finding of exceptional circumstances. *See, e.g.*, *Scheidler v. Berghuis*, No. 07-10346, 2008 WL 161899, at *2 (E.D. Mich. Jan. 15, 2008) (finding allegations that petitioner did not pose a risk of flight or danger to society were "not exceptional circumstances warranting special treatment in the interests of justice"); *Bergmann v. McCaughtry,* 857 F.Supp. 640, 641 (E.D.Wisc.1994) (finding "willingness to abide by the terms of bail" did not demonstrate exceptional circumstances).

The Sixth Circuit has not outlined a specific standard defining what constitutes "exceptional circumstances" to warrant release on bond during adjudication of a habeas petition, but it has emphasized that such relief should rarely be granted. *See Pouncy*, F.3d at 463; *Dotson*, 900 F.2d at 79; *see also Gideon*, 2021 WL 6031492, at *2 (noting courts have "limited

11

exceptional circumstances warranting release during review 'to situations where (1) the prisoner was gravely ill, (2) the prisoner committed a minor crime and is serving a short sentence, or (3) possibly where there was an extraordinary delay in processing the habeas petition'") (quoting *Blocksom v. Klee*, No. 11-CV-14859, 2015 WL 300261, at *4 (E.D. Mich. Jan. 22, 2015)).

Here, Mr. Warner is serving a twenty-four-month sentence for two presumptively valid felony convictions involving serious physical harm to another. His legal arguments were already decided on the merits by the state court of appeals and reviewed by the Ohio Supreme Court, and he enjoyed the benefit of bond during the pendency of the state court review. The undersigned finds that the facts and circumstances articulated in support of this Motion for Stay fall far short of the "extraordinary circumstances" necessary to justify the significant and rare relief he seeks.

### IV. Conclusion and Recommendation

For all of the reasons set forth herein, the undersigned recommends that the Court **DENY** Mr. Warner's Motion for Stay (ECF Doc. 3).

November 14, 2022

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).